**CONNECTICUT FUND FOR the ENVIRONMENT and Natural Resources Defense Council, Inc.**

v.

**STEWART–WARNER CORPORATION, BASSICK DIVISION.**

Civ. No. H 84–490 (JAC).

United States District Court, D. Connecticut.

March 31, 1986.

James Thornton, New York City, and Katharine H. Robinson, Hartford, Conn., for plaintiffs.

Thomas W. Witherington, Bridgeport, Conn., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This citizens' suit pursuant to the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("the Act"), is before the court on cross-motions for partial summary judgment.[1]

The Connecticut Fund for the Environment and the Natural Resources Defense Counsel ("the plaintiffs") have moved for partial summary judgment seeking a declaration that the Stewart-Warner Corporation, Bassick Division ("the defendant") violated the Act on 37 occasions by discharging effluents in excess of the levels authorized by its National Pollution Discharge Elimination System ("NPDES") permit CT0021296 into navigable waters of the United States. The plaintiffs contend, on the basis of the discharge monitoring reports ("DMRs") filed by the defendant with the Connecticut Department of Environmental Protection, *see* Affidavit of James Thornton (filed Aug. 6, 1984), Exhibit D, that there remain no genuine issues of material fact with respect to the liability of the defendant under the Act.

The defendant does not dispute that its DMRs indicate effluent discharges in excess of the levels allowed by its NPDES permit. However, the defendant raises two arguments in opposition to the plaintiffs' motion for partial summary judgment and in support of its own cross-motion for partial summary judgment. The court shall consider each of these arguments in turn.

### I.

■ The defendant contends that it cannot, consistently with this court's ruling in *Connecticut Fund for the Environment, et al. v. The Job Plating Company,* 623 F.Supp. 207, 213 (D.Conn.1985) ("*Job Plating* ") (five-year statute of limitations governs citizens suits under the Clean Water Act), be held liable for violations of its NPDES permit that occurred more than five years before the commencement of this action on April 23, 1984. *See* Supplemental Memorandum in Support of Defendant's Motion for Partial Summary Judgment (filed Nov. 1, 1985) ("Defendant's Supplemental Memorandum") at 3–4. This contention was not disputed by the plaintiffs at oral argument on March 27, 1986. Accordingly, the defendant's motion for

---

1. This is one of a number of similar cases brought by the plaintiffs that were transferred to the docket of the undersigned with the consent of the transferor judges and pursuant to an Order of Transfer and Reassignment (entered Aug. 2, 1983 by Chief Judge T.F. Gilroy Daly). The court has previously ruled upon several defenses common to the defendants in all of these actions. For example, the court ruled that the plaintiffs have standing to bring such actions, *see* Certified Official Transcript of Oral Ruling Delivered at a Hearing Held on November 19, 1984 (filed Nov. 26, 1984), and that such actions are governed by the five-year statute of limitations applicable to government suits under the Clean Water Act. *See Connecticut Fund for the Environment, et al. v. The Job Plating Company,* 623 F.Supp. 207, 213 (D.Conn.1985) ("*Job Plating* "). The defendant in this action, while not conceding the correctness of the court's earlier rulings, has not attempted to distinguish this case from *Job Plating* with respect to the standing and statute of limitations issues. Accordingly, the court adopts by reference the reasoning of its rulings in *Job Plating* and addresses in this ruling only those issues of law that were not decided in the earlier case.

summary judgment is granted with respect to all permit violations that occurred prior to April 23, 1979.[2]

## II.

The defendant also contends that it cannot be held liable under the Act for "at least five" other discharges in excess of the limits prescribed by its permit. *Id.* at 5. It is the defendant's position that these discharges did not exceed the permissible limits "in any statistically significant sense" and therefore cannot constitute violations of the Act. *Id.* at 7.

However, courts in similar cases have rejected defendants' arguments that purely "technical" violations of NPDES permits cannot give rise to liability under the Act. For example, in *Student Public Interest Research Group of New Jersey, Inc. v. Fritzsche, Dodge & Olcott, Inc.,* 579 F.Supp. 1528, 1538 (D.N.J.1984), *aff'd,* 759 F.2d 1131 (3d Cir.1985), the court granted partial summary judgment to the plaintiff over the defendant's objection that the reported violations of its NPDES permit were merely "technical" in nature. The court held that the defendant's argument was "relevant only to the issue of damages" and not to the issue of liability. *Id. See also Sierra Club v. Simkins Industries, Inc.,* 617 F.Supp. 1120, 1127–1128 (D.Md. 1985) (same).[3]

Furthermore, the defendant's position is inconsistent with the Congressional purpose of promoting the expeditious handling of citizens' suits to enforce NPDES permits. As the Senate Report discussing the citizens' suit provisions of the Act observed:

> An alleged violation of an effluent control limitation or standard[ ] would not require reanalysis of technological [or] other considerations at the enforcement stage. These matters will have been settled in the administrative procedure leading to the establishment of such effluent control provision. Therefore, an objective evidentiary standard will have to be met by any citizen who brings an action under this section.

Federal Water Pollution Control Act Amendments of 1972, S.Rep. No. 414, 92nd Cong., 1st Sess., *reprinted in* 1972 U.S. Code Cong. & Ad.News 3668, 3745. The legislative intent to provide "an objective evidentiary standard" for citizens' enforcement suits would be frustrated if plaintiffs had to guess at the level of statistical significance that would be required by a court to establish liability under the Act and then to calculate whether each reported violation would fall within the appropriate standard deviations of the limits prescribed in the permit.

■ Accordingly, the court rejects the defendant's argument that violations of an NPDES permit can give rise to liability under the Act only if they are found to be "statistically significant."[4]

---

**2.** The court will defer until the penalty phase of these proceedings the question of the treatment of two permit violations that are attributed to the month of April 1979. For example, some courts have held that a violation of a monthly or weekly average permit limitation constitutes a violation on each day of the relevant month or week. *See Chesapeake Bay Foundation v. Gwaltney of Smithfield,* 611 F.Supp. 1542, 1552–1553 (E.D.Va.1985); *United States v. Amoco Oil Company,* 580 F.Supp. 1042, 1045 (W.D.Mo. 1984). If the court were to follow these decisions, the defendant could be held liable for violations of its permit only on those days of the month of April 1979 that fell within the five-year limitations period.

**3.** A different result is not suggested by the decision of the district court in *Friends of the Earth v. Facet Enterprises, Inc.,* 618 F.Supp. 532 (W.D.

N.Y.1984). The court in that case observed that the defendant had offered "convincing arguments," including "typographical mistakes in the DMRs," *id.* at 536, to challenge its reported violations. The defendant in this case has offered no evidence of "typographical mistakes" or similar errors in the measuring or reporting of its effluent discharges. Instead, the defendant merely argues that discharges in excess of NPDES permit limits should *never* constitute violations of the Clean Water Act unless they are proved to be "statistically significant."

**4.** Of course, the court may consider the asserted insignificance of the defendant's permit violations during the penalty phase of these proceedings. *See Student Public Interest Research Group of New Jersey, Inc. v. Fritzsche, Dodge & Olcott, Inc., supra,* 579 F.Supp. at 1538.

## Conclusion

For the reasons stated above, the plaintiff's motion for partial summary judgment is granted with respect to any of the 37 reported permit violations that occurred within five years of the commencement of this action. The defendant's motion for partial summary judgment is granted with respect to any violations that occurred prior to April 23, 1979.

It is so ordered.